(No. 75212

MANUTCHEHR SOHAEY *et al.*, Appellees, v. MARK X. VAN CURA *et al.*, Appellants.

*Opinion filed February 17, 1994.*

HARRISON, J., dissenting.

John B. Kincaid, of Mirabella & Kincaid, P.C., of Wheaton, and James A. Hochman, of Rosemont, for appellants.

James W. Naisbitt and Stephen A. Glickman, of Chuhak & Tecson, P.C., of Chicago, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Resolution of this case requires this court to determine (1) whether trial courts have discretion in fashioning a sanction for a technical violation of Rule 220, and (2) whether defendants can be considered prevailing parties under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 261 *et seq.*) and thereby receive attorney fees.

As the full details of this case are thoroughly set forth in the opinion below (240 Ill. App. 3d 266), we review only those facts necessary for the resolution of this appeal.

## BACKGROUND

Dr. Manutchehr Sohaey and Dr. Mehdi Behinfar, in searching for a broker in income-producing properties, became acquainted with Frank Kotnaur, a real estate broker with the Coldwell Banker Commercial Group, Inc. After a failed bid on one shopping mall, Kotnaur proposed another shopping center, Market Square, to plaintiffs.

Having initially arranged for the plaintiffs to tour Market Square in late April 1986, Kotnaur subsequently provided plaintiffs with *pro formas* prepared by Coldwell Banker. The *pro formas* consisted of two pages and set forth: (1) information as to the status of the mortgage plaintiffs would assume; (2) a list of Market Square tenants and annual rent projections; (3) an estimate of expenses; (4) a *pro rata* breakdown by tenant of rental income; and (5) an income summary for each of the years 1986 through 1995. In essence the information tended to indicate that Market Square should produce sufficient income to meet expenses in each year, with the surplus cash flow increasing each year.

After the negotiations which ensued, the real estate closing proceeded on August 5, 1986. The property, however, never lived up to the plaintiffs' expectations.

On March 17, 1987, plaintiffs brought an action in Du Page County circuit court to recover for economic damages incurred as a result of their purchase of the shopping center. Essentially, plaintiffs claimed that several of their agents acted alone and in concert to cause them to suffer these economic losses.

Of relevance to the instant appeal, plaintiffs claimed that they were damaged by the conduct of Kotnaur and

his employer, Coldwell Banker. Plaintiffs alleged that they believed Kotnaur was acting as their real estate broker in the Market Square sale. Plaintiffs claimed Kotnaur and Coldwell Banker negligently failed to conform to the standard of care required of real estate brokers and therefore breached their fiduciary duties to plaintiffs. Plaintiffs also charged Coldwell Banker with breach of contract, and Kotnaur and Coldwell Banker with intentional tort sounding in civil conspiracy, and violation of the Consumer Fraud Act.

The trial court established a cutoff date of January 14, 1991, for disclosure of expert witnesses. In 1990, plaintiffs timely named Richard Guerard as an expert witness with respect to the standard of care for real estate brokers. Defendants deposed Guerard on October 15, 1990.

Defendants then filed a motion to bar the testimony of Guerard. On January 4, 1991, Judge Ronald B. Mehling found that Guerard was competent to testify and denied the defendants' motion.

On May 2, 1991, however, four days prior to the then-scheduled May 6, 1991, trial date, Judge Mehling's successor, Judge Edward R. Duncan, granted defendants' motion *in limine*, barring Guerard's testimony. Judge Duncan noted that Guerard's answers to discovery interrogatories were based on his interpretations of case law and statutes, and thus, his testimony could convey an incorrect statement of the law to the jury with respect to the issue of standard of care.

Thereafter, plaintiffs located and disclosed Harold Carlson as a substitute expert on July 3, 1991. At that time, the trial date was scheduled for September 3, 1991.

On July 23, 1991, Coldwell Banker and Kotnaur moved to bar Carlson's testimony. They argued that the late disclosure of Carlson was contrary to the letter and intent of Supreme Court Rule 220. At the August 2,

1991, pretrial conference, the trial court granted defendants' motion to bar Carlson.

Ultimately, the trial court directed verdicts in favor of Kotnaur and Coldwell Banker on the counts charging intentional tort. The court also entered judgment in favor of Kotnaur and Coldwell Banker on the violation of the Consumer Fraud Act counts. The jury returned verdicts in favor of Kotnaur and Coldwell Banker on the negligence counts.

Having had the Consumer Fraud Act count decided in their favor, defendants petitioned the court for attorney fees. It was their contention that because they were the prevailing parties, they were entitled to attorney fees pursuant to section 10a of the Act. That section provides:

"In any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." Ill. Rev. Stat. 1991, ch. 121¹/₂, par. 270a.

The trial court denied defendants' fees petition. Apparently, Judge Duncan felt bound by precedent which interpreted the Consumer Fraud Act to require prevailing defendant to show some degree of bad faith on the part of plaintiff, before awarding attorney fees to that prevailing defendant.

Plaintiffs then appealed. They argued, *inter alia*, that the trial court erred when it barred the testimony of Carlson. They contended that they acted diligently to replace their initially disclosed expert and that defendants had sufficient time prior to trial to ascertain Carlson's opinions. They argued that barring Carlson was a manifest injustice with regard to their negligence counts as it left them without an expert on the real estate broker standard of care issue.

Defendants cross-appealed regarding the Consumer

Fraud Act counts. Defendants maintained that they were entitled to attorney fees pursuant to section 10a of the Consumer Fraud Act. Defendants argued that when plaintiffs lost their bid for relief under the Consumer Fraud Act, defendants became prevailing parties under the Act.

The appellate court reversed the trial court ruling barring Carlson's testimony. Initially, the appellate court concluded that trial courts have discretion in dispensing sanctions for a Rule 220 violation, depending on the severity of the discovery violation. The appellate court then went on to review several factors, which it felt this court endorsed in *Barth v. Reagan* (1990), 139 Ill. 2d 399, for determining the severity of discovery violation sanctions. Specifically, the appellate court looked at: (1) the surprise to the adverse party; (2) the prejudicial effect of the expert's testimony; (3) the nature of the expert's testimony; (4) the diligence of the adverse party; (5) whether objection to the expert's testimony was timely; and (6) the good faith of the party calling the witness. The appellate court concluded that, applying these factors to the facts of this case, the trial court abused its discretion in barring Carlson's testimony. (240 Ill. App. 3d at 287.) The appellate court also found that barring plaintiffs' expert under these circumstances would be a manifest injustice. Thus, it held that the barring of Carlson's testimony was prejudicial error and reversed as to plaintiffs' negligence counts.

The appellate court, however, made no determination as to defendants' cross-appeal regarding attorney fees.

## RULE 220

On appeal to this court, Coldwell Banker and Kotnaur argue that neither the language of Rule 220 nor the case law supports the appellate court opinion. They argue that once a trial court has determined that there

has been a violation of Supreme Court Rule 220, the trial court has no discretion in imposing sanctions.

Contrary to defendants' arguments, Rule 220 does not establish such an inflexible and draconian framework. Neither should it be read to require such strict and unthinking adherence thereto that a wholly disproportionate and manifestly unjust punishment must result. Rather, the imposition of sanctions for a violation of discovery rules has always been, and still remains, a matter largely within the sound discretion of the trial court. In this court's view, the trial court failed to properly exercise its discretion. Accordingly, we affirm the appellate court decision and remand for a new trial.

Supreme Court Rule 220 states in pertinent part:

> "[T]he trial court *** shall enter an order scheduling the dates upon which all expert witnesses *** shall be disclosed. The schedule established by the trial court will sequence the disclosure of expert witnesses in accordance with the complexities of the issues involved and the burdens of proof of the respective parties as to those issues. All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence. *** Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." (134 Ill. 2d R. 220(b).)

Rule 220 was adopted with the hopes of eliminating situations where either an expert's late or surprise testimony is permitted to the opponent's prejudice, the opinions are refused to the detriment of the offering party, the trials are continued, or the allowance or denial of the testimony produces reversible error and the cause must be retried. (134 Ill. 2d R. 220, Committee Comments, at 179.) "Rule 220 attempts to eliminate these evils by establishing a uniform, *but not inflexible*, framework for the timely revelation of the identity of

expert witnesses and the subject matter of their testimony." (Emphasis added.) (134 Ill. 2d R. 220, Committee Comments, at 180.) Reading the rule in the context in which it was written, it is clear that the trial court must retain its discretion in formulating a sanction for technical violations of the rule. Indeed, if Rule 220 did eliminate the trial judge's discretion, the rule itself would generate the very evils that it was formulated to eliminate.

The instant case illustrates this point perfectly. Plaintiffs disclosed their original standard of care expert in a timely fashion. The trial judge deemed the disclosed expert competent to testify. A successor judge, however, granted defendants' subsequent motion *in limine* to bar the disclosed witness on the eve of the then-established trial date. Plaintiffs then disclosed a new expert 63 days before a new trial date. At the pretrial conference, one month before the trial, the trial court barred this new expert.

In doing so, the court noted that it was without discretion to formulate any other sanction. The trial judge stated that, under the rule, "the sanction, if there's any sanction to be imposed is disqualification."

This result, however, is utterly antithetical to the purpose and intent of Rule 220. The barring of the second expert could not have been required to prevent surprise. Defendants were well aware that the real estate broker standard of care was a key component to plaintiffs' case. Otherwise, defendants would not have worked so diligently to bar the plaintiffs' proffered experts. Defendants' counsel's ardent protestations notwithstanding, defendants had a better than vague notion that plaintiffs would need to find a replacement after their initial expert was deemed not competent.

Further, the barring of the plaintiffs' expert in this case was extremely detrimental to the offering party.

For a seemingly harmless, technical violation, plaintiffs were denied the opportunity to establish an important aspect of their cause of action.

In adopting Rule 220, this court sought to avoid these very results. Without discretion to impose sanctions other than disqualification, however, arbitrary and unjust results are inevitable.

While we acknowledge that there are committee comments to Rule 220 that state that "where opinions are not sought until a party approaches an imminent trial, a mandatory and exclusionary cutoff is provided," we find that this language is contrary to the spirit of flexibility previously noted. We further find such a position particularly indefensible and unjust in circumstances such as occurred here. Thus, we hold that, in order for Rule 220 to serve the purpose for which this court adopted it, trial courts must have the discretion to impose sanctions other than outright disqualification for technical violations.

In reference to the case at hand, we have already stated that the trial court failed to exercise its discretion because it felt its hands were tied. In addition, we agree with the appellate court and find that disqualification of Carlson was manifestly unjust and constituted prejudicial error. Accordingly, we affirm the appellate court decision to reverse and remand plaintiffs' negligence counts for a new trial.

## ATTORNEY FEES

Coldwell Banker and Kotnaur also petition this court to exercise its supervisory authority and compel the appellate court to render a decision on their cross-appeal regarding attorney fees. In the alternative, petitioners request that we decide the merits of their cross-appeal. Petitioners contend that they were deprived of property without due process as a result of the appellate court's inaction.

Plaintiffs argue, however, that petitioners' appellate court brief was wholly insufficient and should have been stricken or, alternatively, denied. Plaintiffs maintain that Coldwell Banker and Kotnaur failed to perfect their cross-appeal by failing to comply with Supreme Court Rule 341. Plaintiffs also argue that there was no taking of property, as petitioners were never awarded attorney fees, nor are they entitled to such fees. From the opinion and the record, it is impossible for this court to determine why the appellate court failed to render a decision on the attorney fees issue. As the Rule 220 decision has no effect on the trial court's determination of the Consumer Fraud Act counts, we now remand this issue to the appellate court for resolution.

For the foregoing reasons, we affirm the judgment of the appellate court and remand for further proceedings consistent with this opinion.

*Appellate court affirmed;*
*cause remanded with directions.*

JUSTICE HARRISON, dissenting:

I am puzzled by the majority's repeated characterization of this case as involving a "technical" violation of Rule 220 (134 Ill. 2d R. 220). (See 158 Ill. 2d at 376, 382, 383.) Although Rule 220 is technical in nature, plaintiffs' failure to disclose their replacement expert within the required time cannot be dismissed as a mere "technicality." Rather, it is a violation of one of the rule's core substantive provisions. The whole purpose of the rule, as the majority recognizes, is to eliminate the problem of the undisclosed expert witness by establishing a uniform, but not inflexible, framework for the disclosure of such witnesses and their opinions. (134 Ill. 2d R. 220, Committee Comments, at 179-80.) To this end, the rule establishes specific deadlines by which disclosure must be made. There is no dispute that plaintiffs did not meet those deadlines here.

The penalty for missing the mandatory deadlines is clear and definite. Rule 220(b)(1) states unambiguously that "[f]ailure to make the disclosure required by this rule or to comply with the discovery contemplated herein *will* result in disqualification of the expert as a witness." (Emphasis added.) (134 Ill. 2d R. 220(b)(1).) The word "will," when used in this context, is a mandatory directive. (See 134 Ill. 2d R. 220, Committee Comments, at 181 (rule provides for a "mandatory and exclusionary cutoff").) This court acknowledged as much in its recent decision in *Uhrhan v. Union Pacific R.R. Co.* (1993), 155 Ill. 2d 537, 543, when it held that the otherwise "mandatory disqualification of the expert witness" was not required because the plaintiff there had waived his Rule 220 objection. In contrast to the general provisions of Rule 219(c) (134 Ill. 2d R. 219(c)), no other sanctions are available. (*Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 224.) If the rule is violated, failure of the trial court to exclude the expert's testimony is reversible error. *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1991), 223 Ill. App. 3d 31, 42, *aff'd* (1992), 154 Ill. 2d 543.

The majority is justifiably upset about the harshness of applying Rule 220's mandatory disqualification provision to the facts of this case. This is clearly not the sort of situation the court had in mind when it promulgated the rule. In my view, however, the proper solution is for the court to admit that the rule is flawed and to revise ·or abolish it in accordance with the procedures we have established for that purpose. By instead professing that the rule does not mean what it plainly says, the court today does nothing but destabilize the law. At a minimum, our rules should provide certainty and consistency for those who must avail themselves of the courts. If we make the construction of those rules turn on the equities of each particular case, even that is lost. What, then, is the point of having rules at all?